**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ARMANDO JOSE LOPEZ YOC,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀Civil Action No. 3:26-cv-785
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
LEONARD ODDO *et al.*,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Respondents.⠀⠀⠀)

**MEMORANDUM ORDER**

I.⠀⠀⠀INTRODUCTION

Presently pending before the Court is a counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition") (Docket No. 1). Petitioner Armando Jose Lopez Yoc ("Petitioner") is a native and citizen of Guatemala who crossed the border into the United States without inspection at an unknown time and place and who was not admitted or paroled by an Immigration Officer. (Docket Nos. 1, ¶ 44; 5-1). Petitioner is currently detained in the custody of Immigration and Customs Enforcement ("ICE") at Moshannon Valley Processing Center after initially having been detained in West Virginia during a traffic stop conducted by a local sheriff. (Docket No. 1, ¶¶ 18, 43). Petitioner has been detained as such since January 9, 2026, without being provided a bond hearing. (*Id.* ¶ 46). For the reasons set forth herein, the Petition shall be granted in part and denied in part. The Writ shall issue and Petitioner shall be afforded a bond hearing.

II.⠀⠀⠀ADMINISTRATIVE EXHAUSTION

As a threshold matter, the Court finds that administrative exhaustion is unnecessary because it would be futile given the recent decisions issued by the Board of Immigration Appeals

1

("BIA"). *See Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), and *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

  III.  DISCUSSION

  In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") to amend the Immigration and Nationality Act ("INA").  IIRIRA, Pub. L. No. 104-208, 110 Stat. 3009 (1996).  Thereunder, two different statutory provisions govern the detention of aliens pending completion of removal proceedings.[1]  Pursuant to 8 U.S.C. § 1225, an alien "present in the United States who has not been admitted[2] or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission."  8 U.S.C. § 1225(a)(1).  Furthermore, 8 U.S.C. § 1225(b)(2)(A) provides in part that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [§ 1229a]."  The Supreme Court determined that the plain meaning of this statutory provision is that detention must continue until removal proceedings have been concluded.  *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).  Comparatively, 8 U.S.C. § 1226 applies to

---

[1]     Before enactment of IIRIRA in 1996, the INA distinguished between aliens who presented themselves at the border for inspection and those who "entered the United States without inspection."  8 U.S.C. § 1251(a)(1)(B) (1994).  Those in the former group were deemed "excludable aliens" triggering exclusion proceedings pursuant to 8 U.S.C. §§ 1182(a), 1225-26 (1994), while those in the latter group were deemed "deportable aliens" triggering deportation proceedings pursuant to 8 U.S.C. §§ 1251(a)(1)(B), 1252 (1994).  See *Lopez-Campos v. Raycraft*, Nos. 25-1965, 25-1969, 25-1978, 25-1982, __ F. 4th __, 2026 WL 1283891, at *15 (6th Cir. May 11, 2026) (Murphy, J., dissenting) (stating that the IIRIRA reduced the emphasis on the term "entry" in favor of "admission" and jettisoned the phrase "excludable aliens" in favor of "inadmissible aliens," and noting that before 1996, "the INA relied on the word 'entry' to distinguish between excludable and deportable immigrants.  Immigrants who had not entered were subject to exclusion proceedings while those who had [entered] were subject to deportation proceedings," and that the "distinction created an anomaly" in which "[i]mmigrants who lawfully presented themselves at a port of entry had fewer procedural and substantive rights than those who unlawfully snuck in," such that those "immigrants who evaded detection could seek release on bond while those who presented themselves at the border faced mandatory detention." (internal quotation marks and citations omitted)).

[2]     The terms "admission" and "admitted" are defined statutorily to mean, "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.SC. § 1101(a)(13).

2

aliens "arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Under this provision, the Attorney General may continue to detain the arrested alien or may release the alien on bond or conditional parole, except for those who fall into one of certain enumerated categories involving specified criminal offenses and terrorist activities. *See* 8 U.S.C. § 1226(a), (c).   In 2025, Congress amended § 1226 with the Laken Riley Act, excluding from this permissive detention scheme aliens who are inadmissible under § 1182(a)(6)(A), (6)(C), or (7), or are charged with certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E)(i) - (ii); Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Such aliens must be detained subject to an exception to protect witnesses in ongoing criminal investigations under § 1226(c)(4). *See* 8 U.S.C. § 1226(c)(4).

The parties here disagree over the proper interpretation of § 1225 and §1226, and whether one or the other of these statutory provisions applies to Petitioner's detention. Petitioner asserts that he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a), and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), because he was already present in the United States when he was taken into custody and thus was not an "applicant for admission" "seeking admission" at or near the border or at a port of entry. (Docket No. 1, ¶ 49). Respondents, by contrast, assert that an individual who "arrives in the United States," or is "present" here but "has not been admitted" to the United States and is "not clearly and beyond doubt entitled to be admitted," is considered an "applicant for admission" under 8 U.S.C. § 1225(a)(1) who is necessarily "seeking admission" pursuant to § 1225(b)(2)(A), such that Petitioner falls within this category of persons and thus is subject to mandatory detention without entitlement to a bond hearing. (Docket No. 5).

The Court of Appeals for the Third Circuit has not yet addressed this seminal legal issue. Other circuit courts have addressed this issue but have arrived at different conclusions. The Fifth

3

and Eighth Circuits have rendered decisions that support Respondents' position. *See Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). The Second, Sixth, and Eleventh Circuits have rendered decisions supporting Petitioner's position. *See Lopez-Campos v. Raycraft*, Nos. 25-1965, 25-1969, 25-1978, 25-1982, __ F. 4th __, 2026 WL 1283891 (6th Cir. May 11, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, Nos. 25-14065, 25-14075, __ F.4th __, 2026 WL 1243395 (11th Cir. May 6, 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2nd Cir. 2026).

This judicial officer also acknowledges that all judges in this District having considered this issue thus far, and many more elsewhere, have determined that § 1225(b)(2)(A) requires that an "applicant for admission" be actively "seeking" admission at or near the border or port of entry to fall within its scope. *See, e.g.*, *Calzado Diaz v. Noem*, No. 3:25-cv-458, 2025 WL 3628480 (W.D. Pa. Dec. 15, 2025) (Haines, J.) (holding that "§ 1225(b)(2) is tethered more closely to the border and speaks to the potential detention of aliens there, whereas § 1226(a) applies more readily to the potential detention of aliens who have been living within the country"); *Alvarez v. Noem*, No. 3:26-cv-73, 2026 WL 545382 (W.D. Pa. Feb. 26, 2026) (Ranjan, J.) (same); *Silva Cova v. Rose*, No. 3:26-cv-101, 2026 WL 376921 (W.D. Pa. Feb. 11, 2026) ( (Stickman, J.) (same).

While receptive to certain reasoning applied by the Fifth and Eighth Circuits, as well as that of Sixth Circuit Judge Murphy in his dissent, this judicial officer is nonetheless mindful of the interpretive canon of constitutional avoidance[3] and is constrained by what is believed to be

---

[3]     In addition to his statutory arguments, Petitioner also asserts alleged constitutional violations of the Due Process Clause as additional bases in support of his Petition. (Docket No. 1). Respondents acknowledge that "there may come a time when mandatory civil detention without a bond hearing becomes unreasonable" and thus unconstitutional, citing *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020) (analyzing detention and Due Process Clause limits under §1226(c)). (Docket No. 5 at 11). However, Respondents also cite to *Demore v. Kim*, 538 U.S. 510, 531 (2003), which held that detention during removal proceedings is a constitutionally permissible part of that process. *See also Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (holding that detention beyond the removal period per 8 U.S.C. § 1231 for a period of less than six months pending removal is presumed constitutional). As noted above, the parties (and other courts) have sparred over competing interpretations

controlling authority on this issue. Notably, in *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (Alito, J.), the Supreme Court stated, albeit in apparent dicta, that:

> U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings *under §§ 1226(a) and (c)*.

*Id.* at 289 (emphasis added). Absent authority from the Supreme Court or the Third Circuit instructing a different interpretation, this judicial officer follows *Jennings*[4] and joins my colleagues in this District in holding that § 1226(a), rather than the mandatory detention provision of § 1225(b), applies to aliens such as Petitioner who are already present in the United States (even if illegally) when detained and thus not "seeking" admission. Accordingly, Petitioner has a statutory right to a bond hearing because his detention is governed by §1226(a).

IV.    CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner is entitled to a bond hearing because his detention is governed by 8 U.S.C. § 1226(a). Therefore, Petitioner's Petition for Writ of Habeas Corpus is GRANTED IN PART and DENIED IN PART, as set forth in the Order below.

---

of §§ 1225 and 1226, thus part of the Court's consideration when interpreting these statutory provisions is whether a particular interpretation would avoid implicating a constitutional concern. *See Clark v. Martinez*, 543 U.S. 371, 380-82 (2005); *Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025). The Court's conclusion that § 1226 applies here, and that Petitioner is entitled to a bond hearing thereunder, is based in part upon this canon of constitutional avoidance. Consequently, the Court need not address Petitioner's constitutional bases in order to grant his Petition.

[4]    *See In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000) (stating that "we should not idly ignore considered statements the Supreme Court makes in dicta"); *see also Alvarez*, 2026 WL 545382, at *1 (stating that "*dicta* from the Supreme Court still matters"); *Calzado Diaz*, 2025 WL 3628480, at *6 (stating that the Supreme Court's presumptive dicta in *Jennings* has "weight" that "tips the scale . . . *heavily* in favor of finding that § 1226(a) applies" (emphasis in original)). The Court notes that the majority opinions of the Fifth and Eighth Circuits, as well as the dissenting opinion in the Sixth Circuit, present persuasive reasons why *Jennings* does not undermine their statutory interpretations concluding that § 1225(b) is applicable and necessitates mandatory detention. *See Lopez-Campos*, 2026 WL 1283891, at *32 (Murphy, J., dissenting); *Avila*, 170 F.4th at 1136; *Buenrostro-Mendez*, 166 F.4th at 505-06. However, it would not be proper for the Court to disregard *Jennings* without instruction to do so from the Supreme Court or the Third Circuit.

Accordingly, the Court enters the following Order:


AND NOW, this 3rd day of June, 2026, IT IS HEREBY ORDERED that Petitioner Armando Jose Lopez Yoc's Petition for Writ of Habeas Corpus (Docket No. 1) is GRANTED IN PART and DENIED IN PART.

The Petition is GRANTED to the extent that the Writ shall issue on the following terms:

1.  Within ten days of this Order, Petitioner must receive an individualized bond hearing conducted by an immigration judge pursuant to 8 U.S.C. § 1226.

2.  Within seven days of the immigration judge's decision, the parties shall provide a joint notice on the docket advising the Court of the outcome of the bond hearing.

The Petition is DENIED in all other respects.

The Clerk of Court shall mark this case closed.


/s/ W. Scott Hardy
W. Scott Hardy
United States District Judge


cc/ecf:  All counsel of record